PETRIE, Respondent, vs. ROBERTS and another, Appellants.*

*February 11—March 9, 1943.*

* Motion for rehearing denied, with $25 costs, on May 18, 1943.

540

542

For the appellants there were briefs by *Shaw, Muskat & Paulsen* and *Leo W. Slensby,* all of Milwaukee, and oral argument by *Mr. Martin R. Paulsen* and *Mr. Slensby.*

For the respondent there were briefs by *Tierney, Waddleton, Dela Hunt & Tierney* of Milwaukee, and oral argument by *Joseph E. Tierney.*

BARLOW, J. This case must be examined by giving due consideration to the established law that an action for malicious prosecution can be maintained only when the defendant was actuated by malice and acting without probable cause to believe the accused guilty. *Small v. McGovern,* 117 Wis. 608, 94 N. W. 651; *Spain v. Howe,* 25 Wis. 625; *Collins v. Shannon,* 67 Wis. 441, 446, 30 N. W. 730; *Messman v. Ihlenfeldt,* 89 Wis. 585, 591, 62 N. W. 522; *Strehlow v. Pettit,* 96 Wis. 22, 28, 71 N. W. 102; *Eggett v. Allen,* 106 Wis. 633, 637, 82 N. W. 556; *Lauterbach v. Netzo,* 111 Wis. 326, 332, 87 N. W. 229.

The facts are undisputed that the appellant made threats that he would prosecute the respondent, and threatened to have him placed in jail. This may be sufficient to establish malice, but we must also realize that no man could be expected to be cheerful or particularly friendly toward a person who has caused him to lose $5,000. Assume that a person stole your automobile and completely wrecked it, or that a person entered your home in the nighttime and stole valuable property, and was later apprehended. It is hard to conceive of the person suffering the loss greeting the offender cheerfully. Counsel for respondent placed great stress upon the statements made by appellant, which can only have a bearing upon the question of malice. This alone is not sufficient. If the appellant had probable cause for believing, and did believe, that respondent had committed a criminal offense, then appellant was not precluded from making complaint before a proper officer of the law merely because he had malice against the offender. On the contrary, it would be his duty to make such complaint, and the right to make it would not be taken away by showing express malice by very positive proof. *Murphy v. Martin,* 58 Wis. 276, 16 N. W. 603.

On January 26, 1934, appellant purchased an undivided one-fourth interest in one hundred thousand shares of class B common stock of Aurora Brewing Company from the respondent, for which he paid the sum of $5,000, receiving a receipt therefor showing the purchase. He never received the stock. During the month of July, 1934, appellant drove to Aurora, Illinois, to make an investigation of the brewery premises, and was informed by a person having an office on the property described in the option of the Aurora Brewing Company that the company was no longer in existence and that it did not own, and at no time owned, any of said brewery property; that any option which it held had expired. This naturally caused appellant to continue his investigation. After sometime, he employed Leo W. Slensby, an attorney at law, of Milwaukee, Wisconsin, to investigate the matter for him.

Slensby made an investigation and found that the corporation was dissolved by a decree of the circuit court for Sangamon county, Illinois, on November 1, 1935. He conferred with Herbert J. Steffes, district attorney of Milwaukee county, and with Edward J. Yockey, an assistant district attorney of Milwaukee county. Appellant appeared before these officials and stated such facts as he knew, which were supplemented by the information obtained by Slensby. Steffes, as district attorney, suggested that the matter be laid before the securities division of the banking commission of the state of Wisconsin, which later became the department of securities of the state of Wisconsin. The investigation was completed by G. Kenneth Crowell, deputy director and legal counsel for the department of securities. The department of securities made a separate and independent investigation of the facts. Appellant appeared and testified and was examined by the investigator. James H. Keswick, secretary of the Aurora Brewing Company, was subpoenaed before the department of securities and examined under oath. Keswick testified that no stock had ever been issued and no certificates had ever been printed; that there was never any resolution passed by the company authorizing issuance of stock to Mr. Petrie or any other member of the original organization group for any services, option, or anything else; that there were no subscriptions for stock, and that the financial structure of the company was never completed. This testimony was given on September 22, 1939. The case was further investigated by Andrew W. Brunhart, an assistant district attorney of Milwaukee county, just prior to the issuance of the complaint and warrant. This establishes two independent investigations, one by the district attorney's office of Milwaukee county and one by the department of securities of the state of Wisconsin. These investigations were made over a period of nearly two years.

Prior to the issuance of the complaint and warrant, Steffes, Brunhart, Crowell, Slensby, and appellant had full knowledge

of all the information that had been obtained in these investigations. No one will question the fact that Herbert J. Steffes, as district attorney of Milwaukee county, and his assistants are able and experienced men in the field of criminal law. Likewise G. Kenneth Crowell devoted his entire time to violations of the securities laws of the state of Wisconsin.

As a result of these investigations, appellant was advised by the district attorney and two assistant district attorneys of Milwaukee county, by the deputy director and legal advisor of the department of securities of the state of Wisconsin, and by his private attorney, that the respondent had violated criminal laws of the state of Wisconsin and should be prosecuted. Steffes, in a deposition taken for use in an action pending in the state of Florida involving the same facts, testified that as far as he knew Roberts made a fair disclosure and that he did not rely on Roberts in the issuance of the warrant. He stated that he relied generally on the investigation of the department of securities of the state of Wisconsin, and on the oral admission of Petrie before Yockey. He stated that Roberts was the principal involved, and so he presumed ordinarily there would have been no prosecution unless Roberts would have been willing to testify in the matter.

The complaint and warrant charging the specific offenses were prepared by Brunhart, assistant district attorney, and approved by Steffes, district attorney, prior to the time they were issued. Crowell, deputy director of the department of securities, joined in the request for the complaint and warrant. On October 21, 1939, appellant signed the complaint. Brunhart, assistant district attorney, states in his affidavit that he advised Robert W. Roberts (appellant) "that from the investigation conducted there was probable cause to believe that August J. Petrie [respondent] was guilty of a criminal offense under the laws of the state of Wisconsin and informed said Robert W. Roberts [appellant] that it was his duty to sign a complaint so that the criminal laws of the state might be properly enforced."

In *Eggett v. Allen,* 119 Wis. 625, 629, 96 N. W. 803, and *Schwartz v. Schwartz,* 206 Wis. 420, 424, 240 N. W. 177, the court defined probable cause as follows:

"Probable cause has been defined to be such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty."

In *King v. Apple River Power Co.* 131 Wis. 575, 578, 111 N. W. 668, this court said:

"Whether there was probable cause in a case of this sort is solely a question of law for the court where the facts are undisputed. The province of the jury is to deal with the controversy as to facts where there is a dispute in that respect, but such controversy being settled the ultimate question is for the court."

In the present case, it is undisputed that fair and impartial investigations were made by independent law-enforcement departments, and that appellant gave a full disclosure of the facts within his knowledge and information. He was advised by reputable counsel that the respondent was guilty of a violation of the criminal laws of the state of Wisconsin.

"It is a settled rule of law that if a person takes the advice of reputable counsel in making the complaint, honestly believing the one charged to be guilty, he has probable cause as a matter of law for his action, or in other words his conduct is consistent with that of a man of ordinary prudence, if the advice of counsel is based upon a full, fair, and honest statement of all the facts and information within such person's knowledge." *King v. Apple River Power Co.* 131 Wis. 575, 579, 111 N. W. 668; Restatement, Torts, sec. 666; *Topolewski v. Plankinton Packing Co.* 143 Wis. 52, 126 N. W. 554; *Small v. McGovern* 117 Wis. 608, 94 N. W. 651.

In the case of *Smith v. Federal Rubber Co.* 170 Wis. 497, 175 N. W. 808, the facts were given to the district attorney by the defendant, and after an unsuccessful prosecution, the

plaintiff started an action for damages for malicious prosecution. After the jury had found the defendant did not have probable cause to believe the plaintiff guilty of the offense charged in the complaint and that he acted maliciously in commencing criminal proceedings, this court reversed the decision and held that one who makes a complaint on the advice of a reputable attorney after a full, fair, and honest statement to such attorney of all the facts and information within his knowledge, honestly believing the person charged to be guilty, has probable cause as a matter of law for his action. The district attorney did not make an independent investigation in that case; no separate state department was interested. It is difficult to conceive of a more thorough effort being made to obtain all the facts prior to issuance of the complaint and warrant than we have in this case.

It developed at the preliminary examination of respondent, in the criminal case, that the board of directors had authorized the issuance of the stock in question to respondent. Keswick, who had testified before the department of securities, changed his testimony at the preliminary examination. Neither appellant nor any of the people who made an investigation was able to obtain this information prior to the time of the preliminary examination, and even Keswick apparently did not know it to be true until that time.

Counsel for respondent claims that the action of the appellant in providing the use of his car for making the arrest of respondent in Florida, after the complaint and warrant were issued, is material in determining the question of probable cause. It is undisputed that his car was furnished at the request of the officer making the arrest, and purely for his convenience.

We conclude as a matter of law, from the undisputed facts in this case, that there was probable cause which justified the appellant in signing the complaint.

*By the Court.*—Order reversed, and the cause remanded with instructions to enter summary judgment dismissing the complaint of the plaintiff.

FOWLER, J. (*dissenting*). I agree with the propositions of substantive law stated in the opinion of the court, but do not agree that judgment should be entered herein under the summary-judgment statute, sec. 270.635. That statute is not stated in the opinion of the court. It reads in part as follows:

"*Summary judgments.* (1) Summary judgment may be entered as provided in this section in any civil action or special proceedings.

"(2) The judgment may be entered in favor of either party, on motion, upon the affidavit of any person who has knowledge thereof, setting forth such evidentiary facts, including documents or copies thereof, as shall, if the motion is by the plaintiff, establish his cause of action sufficiently to entitle him to judgment; and, if on behalf of the defendant, such evidentiary facts, including documents or copies thereof, as shall show that his denials or defenses are sufficient to defeat the plaintiff, together with the affidavit of the moving party, either that he believes that there is no defense to the action or that the action has no merit (as the case may be) unless the opposing party shall, by affidavit or other proof, show facts which the court shall deem sufficient to entitle him to a trial."

The purpose of this statute is to prevent delays in the trial of cases by interposing sham and frivolous causes of action or defenses. *Prime Mfg. Co. v. A. F. Gallun & Sons Corp.* 229 Wis. 348, 281 N. W. 697. No such cause of action or defense is involved here. The issue on which a summary judgment is sought is raised by the defense of advice of counsel interposed by defendant's answer. That is certainly not a sham and frivolous defense. Nor is the cause of action alleged a sham or frivolous one. The summary-judgment statute cannot be used to inaugurate the practice of avoiding

trial by jury of jury issues presented by the pleadings upon affidavits and adverse examination presented to a judge upon a motion for such judgment. This point was squarely and unanimously decided in *Prime Mfg. Co. v. A. F. Gallun & Sons Corp., supra.* The cases bearing upon the point are cited in that case. No case to the contrary is cited in the opinion of this court, nor can one to the contrary be found in the books.

The point at issue under the answer and the statutory denial is whether the defendant fully and fairly stated to his attorney and to the participating attorneys in the district attorney's office all the facts within his knowledge, and whether he honestly and in good faith relied on the advice of these attorneys in instituting the criminal proceedings. A very different aspect of the case as to reliance than that presented by the majority opinion of the court might appear to a jury upon adverse or cross-examination of the defendant on a trial before them, and examination of the plaintiff before a jury might support an inference by the jury that the defendant did not fully and fairly state the facts to the attorneys. Besides the matter of good faith in reliance on advice of the attorneys is one of inference to be drawn by the jury. The defendant of course may by affidavit categorically state that he did so rely, and from the nature of the case it cannot be categorically denied by an affidavit of the plaintiff or anyone else because no one else can possibly know the state of the defendant's mind, and that no affidavit of categorical denial was presented cannot afford basis for granting a summary judgment.

Upon the propositions of reliance on the advice of counsel and full and fair statement it is stated in Restatement, 3 Torts, p. 421, sec. 666, as to "Functions of Court and Jury:" "It is for the jury to determine whether the client [defendant] sought the advice of his attorney [the attorneys] in good faith or whether the advice was sought to protect him from liability

for initiating proceedings upon which he had already determined. It is also for the jury to find whether the accused laid before the attorney all the facts which he knew or of which he had reliable information; or, on the other hand, whether he suppressed facts which he should have known to be material." The first proposition next above stated is particularly in point here because of the statements in plaintiff's affidavit that before the criminal case was started the defendant stated that "he was going to put the plaintiff in jail if there was any way of getting him there;" the statement in Mr. Nohl's affidavit that defendant said to him on August 24, 1934, "he was going to the district attorney to get a warrant to put Petrie behind the bars if there was any way of getting him there; that Waupun was too good for him." Complaint was first made to the district attorney's office by letter September 7, 1937, and the complaint was finally signed and warrant issued October 21, 1939. The hearings before the securities division were begun September 28, 1938, and were concluded September 22, 1939. Whether on these facts and what transpired during the several meetings and hearings had the defendant was seeking to "protect himself from liability for initiating" criminal proceedings was particularly for a jury to determine.

It seems to me that the opinion of the court is erroneous for deciding the case as if it were before us on appeal from a judgment of dismissal based upon the granting of a motion for a directed verdict or a verdict of a jury. Were either the situation, judgment for dismissal would be proper. But it is entirely clear to me that to direct judgment upon a motion for a summary judgment is grossly erroneous, both upon the language of the statute and its rationale. The order of the circuit court should be affirmed.

I am authorized to state that Mr. Justice WICKHEM and Mr. Justice MARTIN concur in this dissent.